**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Christine Borovoy, individually and on behalf of all others similarly situated, | 1:22-cv-04251 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Mark Anthony Brands Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.      Mark Anthony Brands Inc. ("Defendant") manufactures, labels, markets, and sells flavored alcoholic beverages represented as containing lime ingredients under the White Claw Surge line ("Product").



2.    Relevant representations include "White Claw Hard Seltzer – Surge," "Natural Lime" with green banding, "Spiked Sparkling Water With A Hint Of Natural Lime," "Hard Seltzer With Flavors," "Made Pure," "8% ALC/VOL," "Gluten Free," and "2g Carbs."

3.    Consumer demand for alcoholic beverages described as "hard seltzer" has increased several hundred percent in the past five years.

4.    These fermented malt beverages are marketed at the intersection of health and leisure, based upon having fewer calories than beer and added fruit flavoring.

## I.    "NATURAL LIME" AND "HINT OF NATURAL LIME" IS MISLEADING

5.    The addition of fruit ingredients to alcoholic beverages causes consumers to incorrectly believe the positive properties of the added fruit will balance the negative properties of alcohol.

6.    Limes are one of the fruits that consumers increasingly add to beverages.

7.    Consumption of limes has increased several hundred percent since 1990.

8.    The price of limes has risen consistently over the past two decades.

9.    Reasons for the popularity of limes include taste, texture, health benefits, and adaptability.

10.    Limes are high in vitamin C, a primary antioxidant which protects cells from damaging free radicals.

11.    The polyphenol antioxidants in limes are linked with reducing hypertension.

12.    The front label includes three statements of "Natural Lime" with green banding and "A Hint Of Natural Lime."

13.    Consumers understand "hint" the same way as its dictionary definition, which is a slight but appreciable amount.

14.     However, the representations are misleading because the Product does not contain a slight but appreciable amount of lime, but at most, a *de minimis* or negligible amount of lime.

15.     This is shown through the ingredient list in small print on the back which does not identify any lime ingredients but instead includes "Natural Flavors."

INGREDIENTS: PURIFIED CARBONATED WATER, ALCOHOL, NATURAL FLAVORS, CANE SUGAR, CITRIC ACID, SODIUM CITRATE.

INGREDIENTS: PURIFIED CARBONATED WATER, ALCOHOL, NATURAL FLAVORS, CANE SUGAR, CITRIC ACID, SODIUM CITRATE.

16.     According to flavor expert Bob Holmes, if the Product provided "all the flavor depth" and nutritive attributes of beverages containing a "hint of natural lime," the ingredients would list "lime juice" instead of "Natural Flavors."

17.     Because lime juice or lime oil is not a separately identified ingredient, it means that any real lime, if present, is at trace or *de minimis* levels as part of the added flavoring.

18.     Consumers prefer beverages which get their taste from ingredients instead of added flavors, because this is more natural, less processed and does not involve the use of additives and solvents used in making "natural flavors."

19.     Lime juice or lime oil is considered food because it is a source of nutritive value. [1]

20.     "Natural Flavors" refers to a mix of fruit extractives and essences, combined with additives and solvents, that are synthesized and concentrated in a laboratory.

21.     "Natural Flavors" consists of flavor compounds which imitate the taste provided by limes, though the source is from fruits other than limes.

22.     These flavorings are less expensive than real limes, and more concentrated, so less

---

[1] 21 C.F.R. § 101.22(a)(3); Illinois incorporates the federal food labeling regulations in the Illinois Food, Drug and Cosmetic Act ("IFDCA") and its parallel regulations, and TTB regulations. *See* 410 ILCS 620/1, *et seq.*

of needs to be used.

23.    Limes gets their flavor from alcohols, aldehydes, esters, ethers, terpenes, hydrocarbons and ketones.

24.    These compounds give limes their characteristic sour or bitter taste, complemented by tartness.

25.    However, lab analysis reveals or would reveal a relative abundance of limonene and citral, compared to the other key odor-active compounds in limes, which (would) indicate a *de minimis* amount of lime.

26.    The relative absence of the complementary flavor compounds in limes causes the Product to lack an authentic lime taste, and the woody and piney notes of real limes

27.    The absence of these compounds indicates the use of a negligible amount of lime, and less than the appreciable amount expected by promising a "Hint of Lime."

28.    An appreciable amount would be an amount sufficient to flavor the Product only with limes, instead of compounded and synthesized essences from sources other than limes.

29.    The cost of using more lime ingredient would be approximately several cents per 300g – not a significant addition to their price.

30.    Ready-to-drink alcoholic beverages with a "hint" of lime are not a rare or pricey delicacy such that it is unreasonable for consumers to expect this.

31.    The Product is unable to confer any of these health-related benefits because it has less lime ingredients than it purports to.

## II.    "HARD SELTZER" AND "SPIKED SPARKLING WATER" ARE MISLEADING

32.    The Product identifies and describes itself as "Spiked Sparkling Water With A Hint of Natural Lime" above "Hard Seltzer With Flavors."




33. "Spiked Sparkling Water" and "Hard Seltzer" do not indicate the class of malt beverage the Product is in.

34. Where a malt beverage or malt beverage specialty product does not fall under any class designation and is not known to the trade under a particular designation, it must be designated with a distinctive or fanciful name and a statement of the composition.

35. "Spiked Sparkling Water" appears to be the Product's fanciful or distinctive name because it is directly above what is supposed to be its statement of composition, "Hard Seltzer With Flavors."

36. The distinctive or fanciful name and the statement of composition are misleading.

37. "Hard Seltzer With Flavors" does not identify the Product's base class and/or type designation, such as beer or malt beverage.

38. "Hard seltzer" has been a commonly used, yet misleading name to describe flavored

malt beverages such as the Product.

39.   With one notable exception, the term "hard" in the context of alcohol refers to distilled spirits, i.e., "hard liquor."

40.   The one exception is "hard cider," which has historically been a fermented apple beverage.

41.   Various theories surround how the term "hard" became associated with cider.

42.   One explanation contends that "hard" was implicit because the Middle English definition of cider was a "strong drink."

43.   Another theory posits that "hard" was used to distinguish fermented apple juice which contains alcohol from non-fermented and non-alcoholic fresh apple juice.

44.   Eventually, the term hard cider was adopted in the IRS tax code and given a statutory definition.

45.   In the context of alcohol, "spike" means the addition of distilled spirits to an otherwise non-alcoholic beverage, such as fruit punch.

46.   To spike a drink means to put alcohol or drugs into someone's drink without their knowledge or permission.

47.   Consumer understanding of this term involves the addition of distilled spirits to "spike" a drink.

48.   The Product's use of the terms "Spiked Seltzer" and "Hard Seltzer" are false, deceptive and misleading because it does not contain any distilled spirits.

49.   Instead, the Product's alcohol comes from fermented sugars derived from malted grains.

III.   "MADE PURE" IS MISLEADING

50.   Consumers understand "pure" consistent with its dictionary definition as clean and not harmful in any way

51.   Pure is defined as clean and not harmful in any way.

52.   The promotion of the Product as "Made Pure" in conjunction with the promise of a "hint of natural lime" obscures the harmful effects of alcohol and emphasizes its nutritional and health properties.

53.   Consumers will not review the back of the label to see that "Made Pure" refers to a patented "Brewpure" process.

54.   In the context of an alcoholic beverage, "Made Pure" tells consumers the Product will be less harmful than other alcoholic beverages.

55.   However, the Product is equally harmful to other alcoholic beverages because all alcohol contains seven calories per gram.

56.   In 2004, the National Institute on Alcohol Abuse and Alcoholism ("NIAAA") wrote that alcoholic beverages are almost entirely "empty calories."

57.   Since alcoholic beverages supply calories but few nutrients, the 2020-2025 Dietary Guidelines for Americans ("DGA") encourages limiting their daily intake.

58.   Consumption beyond daily caloric limits increases the risk of conditions such as liver disease, cardiovascular disease, injuries and alcohol addiction.

59.   Even drinking alcohol within calorie limits increases all-cause mortality, due to higher rates of cancer and cardiovascular disease, compared with lower alcohol consumption.

## IV.   "2G CARBS" MISLEADING

60.   Consumers seeing the Product in a store will notice "2g Carbs" at the top of the can.



61. The "2g Carbs" statement is misleading because consumers expect items low in carbohydrates to be low in calories, and useful for weight control.

62. Contrary to these expectations, the Product is not low in calories.

63. The disclosure of 220 calories is not visible at eye level, and listed sideways on the lower portion of the can, out of the normal field of vision.

## V.    CONCLUSION

64. Defendant makes other representations and omissions with respect to the Product which are false and misleading.

65. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

66. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

67. Had Plaintiff known the truth, she would not have bought the Product or would have paid less for it.

68. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $8.49 for a four-pack of 16-fluid-ounce cans, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

69. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

70. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

71. The Product has been sold at thousands of locations in the states covered by the classes Plaintiff seeks to represent, with the representations challenged here, for over a year.

72. Plaintiff Christine Borovoy is a citizen of Illinois.

73. Defendant Mark Anthony Brands Inc. is a Washington corporation with a principal place of business in Chicago, Cook County, Illinois.

74. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

75. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here for over a year, in thousands of locations, in the States covered by Plaintiff's proposed classes.

76. The Product is available to consumers from grocery stores, liquor stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

77. Venue is in this District because Defendant resides in this District and the actions giving rise to the claims occurred within this District.

78. This action should be assigned to the Eastern Division of this District because a substantial part of the events or omissions giving rise to these claims occurred in Cook County, including Defendant's decisions regarding the manufacture, labeling, and marketing of the Product described here.

## Parties

79. Plaintiff Christine Borovoy is a citizen of Freeport, Illinois, Stephenson County.

80. Defendant Mark Anthony Brands Inc. is a Washington corporation with a principal place of business in Chicago, Illinois, Cook County.

81. Defendant is a leading seller of flavored alcoholic beverages.

82. Consumers trust the White Claw brand because its ubiquitous advertising promotes its use of fruit ingredients.

83. Defendant spends millions of dollars to identify attributes of products consumers want and will pay more for.

84. Defendant's studies and records acknowledge that consumers increasingly seek alcoholic beverages with fruit ingredients.

85. Plaintiff purchased the Product at locations including Woodman's Food Market, 3155 McFarland Rd, Rockford IL 61114, between January 1, 2022, and August 1, 2022, among other times.

86. Plaintiff believed and expected the Product contained a non-negligible amount of lime, contained distilled spirits, was "pure," and was lower in calories than it was, because that is what the representations and omissions said and implied, on the front label and the absence of any

reference or statement elsewhere on the Product.

87.     Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

88.     Plaintiff bought the Product at or exceeding the above-referenced price.

89.     Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.

90.     Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

91.     Plaintiff paid more for the Product than she otherwise would have absent Defendant's false and misleading statements and omissions.

92.     Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

93.     Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar flavored alcoholic beverages with similar claims, because she is unsure whether those representations are truthful.

Class Allegations

94.　Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Montana, Wyoming, Idaho, Kentucky, West Virginia, Iowa, Mississippi, and Alaska who purchased the Product during the statutes of limitations for each cause of action alleged.

95.　Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

96.　Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

97.　Plaintiff is an adequate representative because her interests do not conflict with other members.

98.　No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

99.　Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

100.　Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

101.　Plaintiff seeks class-wide injunctive relief because the practices continue.

12

<u>Illinois Consumer Fraud and Deceptive Business Practices Act</u>
<u>("ICFA"), 815 ILCS 505/1, *et seq.*</u>

<u>(Consumer Protection Statute)</u>

102.   Plaintiff incorporates by reference all preceding paragraphs.

103.   Plaintiff believed the Product contained a non-negligible amount of lime, contained distilled spirits, was "pure," and was lower in calories than it was.

104.   Defendant's false, misleading, and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

105.   Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

106.   Plaintiff relied on the representations and omissions.

107.    Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(Consumer Fraud Multi-State Class)</u>

108.   The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

109.   The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

110.   Defendant intended that the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

111. As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

112. Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

113. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it contained a non-negligible amount of lime, contained distilled spirits, was "pure," and was lower in calories than it was.

114. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

115. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

116. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it contained a non-negligible amount of lime, contained distilled spirits, was "pure," and was lower in calories than it was.

117. Defendant's representations affirmed and promised that the Product contained a non-negligible amount of lime, contained distilled spirits, was "pure," and was lower in calories than it was.

118.   Defendant described the Product so Plaintiff believed it contained a non-negligible amount of lime, contained distilled spirits, was "pure," and was lower in calories than it was, which became part of the basis of the bargain that it would conform to its affirmations and promises.

119.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

120.   This duty is based on Defendant's outsized role in the market for this type of Product, a trusted brand and producer of hard seltzer beverages.

121.   Plaintiff recently became aware of Defendant's breach of the Product's warranties.

122.   Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

123.   Plaintiff provides notice to Defendant that it breached the express and implied warranties associated with the Product.

124.   Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

125.   The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

126.   The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained a non-negligible amount of lime, contained distilled spirits, was "pure," and was lower in calories than it was.

127.   The Product was not merchantable because Defendant had reason to know the

15

particular purpose for which the Product was bought by Plaintiff, because she expected it contained a non-negligible amount of lime, contained distilled spirits, was "pure," and was lower in calories than it was, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

128.  Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

129.  Defendant had a duty to truthfully represent the Product, which it breached.

130.  This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted brand and producer of flavored alcoholic beverages.

131.  Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

132.  These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

133.  The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

134.  Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

135.  Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

136.   Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained a non-negligible amount of lime, contained distilled spirits, was "pure," and was lower in calories than it was.

137.   Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

138.   Defendant knew of the issues described here yet did not address them.

139.   Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

140.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

17

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: August 11, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com